# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

_____

UNITED STATES OF AMERICA,

      Plaintiff,

vs.                                                                No. 16-CR-0848-WJ

JOSE CHAVIRA,

      Defendant.

## MEMORANDUM OPINION AND ORDER DENYING DEFENDANT'S MOTION TO DISMISS INDICTMENT OR OTHER SANCTIONS

THIS MATTER comes before the Court following a hearing on Defendant's Motion to Dismiss Indictment or Other Sanctions (**Doc. 24**), filed February 20, 2018. Jose Chavira (hereinafter "Defendant") is charged with possession of a firearm and ammunition by a felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). Defendant has moved this Court to dismiss his indictment on the grounds that the post-indictment delay violated his constitutional and statutory rights. Having reviewed the parties' pleadings, having considered the testimony and arguments presented at the hearing on June 6, 2018, and having considered the controlling law, the Court finds that Defendant's motion is not well-taken and, therefore, is DENIED.

## STATEMENT OF THE CASE

This case stems from the Government's eighteen-month delay from indicting Defendant with possession of a firearm by a felon to arraigning him on this charge in federal court. Defendant was federally indicted while he was already incarcerated and awaiting trial on related state charges. Defendant alleges he has been deprived of his rights under the Sixth Amendment guarantee of a speedy trial, the notice provisions of the Speedy Trial Act and the Interstate

Agreement on Detainers, the Fifth Amendment Due Process Clause, and the Sixth Amendment right to counsel. The Court finds that there was no violation of Defendant's Fifth or Sixth Amendment rights. Without ruling on whether the Government violated the statutory notice provisions, the Court rejects Defendant's argument that dismissal of the indictment would be the proper remedy for such violations.

## BACKGROUND[1]

On December 14, 2015, Defendant was arrested on multiple state charges, which included possession of a firearm by a felon. Defendant was incarcerated and awaiting trial for state charges when the following events took place. In February 2016, the United States Attorney's Office adopted Defendant's felon in possession charge for federal prosecution, and the Government obtained a federal indictment on March 8, 2016, based on the same events upon which Defendant was already arrested and charged in state court. The Government did not obtain a detainer or provide notice to Defendant that there was a federal indictment against him. On March 31, 2016, apparently without the knowledge of the United States, a state grand jury in the Second Judicial District Court, Bernalillo County, returned an indictment that charged Defendant with numerous crimes. The United States asserts that it "speculates that the State of New Mexico did not know that the United States was prosecuting the defendant." Doc. 26 at 5 n.1.

On May 12, 2016, Defendant pleaded *nolo contendere* to three of the state charges, including felon in possession of a firearm. Doc. 26-1; Doc. 26-2. The United States asserts that it had no knowledge at that time that Defendant entered this plea, which Defendant entered without any notice from the United States that he had a federal indictment against him. Defendant was sentenced to a total of eight and one-half years' incarceration in state court, with eighteen

---

[1] The Court is not making factual findings related to Defendant's conduct on the underlying charge in this Memorandum Opinion and Order.

months' of that incarceration for the firearm charge, and an active term of four years and the remainder suspended. Doc. 26-2 at 16:11–17:6.

On July 13, 2017, the Assistant United States Attorney assigned to this case, Mr. Samuel Hurtado, received a mass email from his supervisor advising prosecutors of the recent ruling in *United States v. Archuleta*. No. 14-CR-1542 (D.N.M. June 16, 2017) (Vazquez, J.). In that case, Judge Vazquez dismissed an indictment with prejudice because the Government had failed to bring the defendant, who was in state custody serving a sentence, to federal court for arraignment in a timely manner. On September 13, 2017, the attorney for the Government finally reviewed Defendant's case, as the "large caseload made it hard to attend to this matter sooner." Doc. 26 at 6 n.4. Upon reviewing the file, Mr. Hurtado asked the case agent, ATF Task Force Officer (TFO) Victor Hernandez, about the status of the defendant. *See* Government's Exhibits 1–3.TFO Hernandez indicated Defendant was in state custody, serving time for one or more probation violations. *Id.* On September 14, 2017, the United States filed a motion for writ of *habeas corpus ad prosequendum* (Doc. 6) requesting Defendant's transfer from state custody to the U.S. Marshal for prosecution. Defendant was arrested on September 26, 2017, and he was also appointed counsel on that day. Defendant was arraigned on the federal charge on September 27, 2017, which was over eighteen months after he was indicted.

In late November 2017, defense counsel advised the attorney for the Government of a possible speedy trial issue, which motivated Mr. Hurtado to again speak to TFO Hernandez on December 13. *See* Government's Exhibits 4–6. The Government asserts that the emails between TFO Hernandez and Mr. Hurtado revealed that TFO Hernandez "did not know that he was supposed to timely contact the U.S. Marshals Service after the defendant had been indicted federally. TFO Hernandez admitted that he did not know the procedure for notifying a defendant

in state custody of a pending federal indictment." Doc. 26 at 8. The Government asserts that "TFO Hernandez made an honest mistake. The United States also admits fault in failing to bring the defendant into federal custody in a timely manner. The United States submits, however, that the delay was not the result of any sinister motive or bad faith by the United States . . . ." *Id.*

Defendant filed the present motion on February 20, 2018 (Doc. 24), urging the Court to dismiss the indictment against him. The Government responded on March 1, 2018 (Doc. 26), and Defendant replied on March 16, 2018 (Doc. 28). The Court conducted a hearing on this matter on June 6, 2018, at which time the Court heard arguments from the parties and testimony from TFO Hernandez. Trial in this matter is set for August 6, 2018.

## DISCUSSION

Defendant makes a number of assertions to support his requested relief of dismissal of the indictment with prejudice. As discussed below, the Court does not find a violation of any of Defendant's constitutional rights, and dismissal of the indictment is not the proper remedy for a violation of the relevant statutory provisions.

## I.       Sixth Amendment: Speedy Trial Guarantee

Among its guarantees, the Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial." U.S. Const. amend. VI. As the Tenth Circuit has stated, "[a]lthough the right is somewhat amorphous, the remedy is severe: dismissal of the indictment." *United States v. Margheim*, 770 F.3d 1312, 1325 (10th Cir. 2014) (quoting *United States v. Seltzer*, 595 F.3d 1170, 1175 (10th Cir. 2010)). The constitutional right to a speedy trial "attaches when the defendant is arrested or indicted, whichever comes first." *United States v. Black*, 830 F.3d 1099, 1112 (10th Cir. 2016) (citations omitted). In *Barker v. Wingo*, 407 U.S. 514 (1972), the Supreme Court provided the four-factor framework that the trial

4

court should follow when determining whether a delay has caused a defendant to be deprived of his right to a speedy trial. 407 U.S. at 530–32. The *Barker* analysis is a balancing test in which the court must weigh the following factors: "(1) the length of delay; (2) the reason for the delay; (3) the defendant's assertion of his right; and (4) prejudice to the defendant." *Margheim*, 770 F.3d at 1325–26 (quoting *United States v. Yehling*, 456 F.3d 1236, 1243 (10th Cir. 2006)). The first factor "functions as a triggering mechanism, and the remaining three factors need only be assessed if the delay is long enough to be presumptively prejudicial[.]" *Id.* at 1326 (citations and quotation marks omitted).

### A.    First *Barker* Factor: Length of Delay

In *United States v. Seltzer*, 595 F.3d 1170 (10th Cir. 2010), the Tenth Circuit noted that "the length of the delay crossed the threshold from 'ordinary' to 'presumptively prejudicial' because it was more than a year." 595 F.3d at 1176 (citation omitted). The United States concedes here that the undisputed eighteen-month delay from indictment (Mar. 8, 2016) to arrest (Sept. 26, 2017) and arraignment (Sept. 27, 2017) is presumptively prejudicial. Doc. 26 at 10. This first factor weighs in favor of Defendant, and the Court may consider the remaining factors.

### B.    Second *Barker* Factor: Reason for Delay

This factor requires the court to "assess the reasons offered by the government for not bringing the defendant to trial in a timely fashion." *Margheim*, 770 F.3d at 1326. The Tenth Circuit has noted that "[i]t is incumbent upon the government to present acceptable reasons for the delay." *Id.* The court must determine whether the Government's delay was willful, such as an attempt to stall the defense, or the result of a "neutral reason," such as negligence by the prosecution due to heavy caseloads. *Id.* Deliberate or willful conduct weighs heavily against the prosecution, while a "neutral reason" weighs less heavily against the government. *See Barker*,

407 U.S. at 531 ("A more neutral reason such as negligence or overcrowded courts should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant."); *United States v. Vaughan*, 643 F. App'x 726, 730 (10th Cir. 2016) ("[C]ourts have held that the reason-for-delay factor weighs against the government when it cannot explain its failure to arrest or notify the defendant of an indictment.").

In this instance, the Government asserts that "there was no deliberate attempt to hamper the defense. The case agent simply did not know that he was supposed to contact the U.S. Marshals Service to notify the defendant about his pending federal indictment." Doc. 26, at 10–11. The prosecuting attorney's own admission of neglect due to his heavy caseload is part of the Court's consideration, as well. Doc. 26 at 6 n.4. Defendant asserts that the "Government's response concedes extraordinary negligence and inexcusable delay." Doc. 28 at ¶ 1.

At the hearing conducted on June 6, 2018, the Court heard testimony from TFO Hernandez about his role as the case agent. TFO Hernandez testified that, at the time, he was unaware that Defendant was being prosecuted in state court for possession of a firearm, or that Defendant had entered a plea of no contest to the firearm charge in state court. Instead, TFO Hernandez thought that Defendant was being held in state custody pursuant to outstanding warrants for probation violations, which TFO Hernandez's research reflected were among Defendant's charges. The email exchange between AUSA Hurtado and TFO Hernandez reflects this was TFO Hernandez's belief. *See* Government Exhibits 2, 4. After he became aware that he should have presented the indictment to the appropriate deputy U.S. Marshal, who would in turn have filed a detainer, TFO Hernandez indicated that he was unaware of the procedure for notifying a defendant in state custody of a federal indictment. This testimony is also supported

by the email exchange between AUSA Hurtado and TFO Hernandez. *See* Government's Exhibits 4, 5. TFO Hernandez stated in the email exchange that he believed he "did everything right at the time," and he thought he made a "good faith mistake." *See* Government's Exhibit 6. The Court finds that the testimony of TFO Hernandez is credible, and that TFO Hernandez acted in good faith.

The Court also relies on the status of Assistant United States Attorney Samuel Hurtado as a member of this judiciary's bar to support the notion that he has honestly presented the reasons underlying the delay. AUSA Hurtado's statements to the Court indicate that there was insufficient communication between the state prosecutor's office[2] and the United States Attorney's Office on Defendant's case. The Court notes that both state and federal prosecutorial offices have heavy caseloads and while the two offices have no obligation to share information, AUSA Hurtado indicated that the lack of communication was also a factor in the delay. AUSA Hurtado's statements reflect no intentional, bad-faith motive for delaying prosecution.

Considering the testimony and representations made at the hearing, it appears that an honest mistake, heavy caseloads, and a lack of communication caused the post-indictment delay. The Court rejects the notion that there was an intentional eighteen-month delay in prosecution because Defendant was already in state custody. The Government has therefore provided sufficient evidence that the delay was not motivated by bad faith, and the Court finds that the delay was caused by the prosecution's neglect. Such negligence weighs against the Government in the *Barker* balancing framework, although much less heavily than willful misconduct.

The Court agrees with Defendant, however, in that "[t]he United States Attorney, not the case agent, is in the best position to be aware of its own court filings." Doc. 28 at ¶ 6. The facts

---

[2] The state prosecutor in this case is the District Attorney for the Second Judicial District, County of Bernalillo, State of New Mexico.

indicate that the federal prosecutor assigned to this case did not review Defendant's file until September 2017, eighteen months after Defendant's federal indictment. It was upon the file review that the formal proceeding guaranteed to Defendant by the Constitution commenced, which also resulted in the appointment of counsel. Given these facts, timely review of the file likely would have resulted in the arraignment of Defendant sooner, and could have eliminated the need for the Court to opine on these issues now. The Tenth Circuit cited the Third Circuit case *United States v. Battis* approvingly on this point, noting that "[o]nce federal prosecutors bring an indictment against a defendant, they have a duty to notify the District Court that the defendant should be arraigned and appointed counsel, and to bring the defendant to trial expeditiously." *Seltzer*, 595 F.3d at 1177 (quoting *United States v. Battis*, 589 F.3d 673, 680 (3d Cir. 2009)). The United States offers no excuse for its negligence, and the Court agrees with Defendant that the prosecution is not "absolved" of its untimely delay here. It is precisely because of this negligence that this factor weighs against the Government in the Court's analysis.

### C.     Third *Barker* Factor: Defendant's Assertion of His Speedy Trial Right

The Tenth Circuit has explained that "[a]t the third step of the *Barker* test, we assign strong weight to the defendant's assertion of his constitutional speedy-trial right, but '[w]e may weigh the frequency and force of [his] objections' to the delay." *Margheim*, 770 F.3d at 1328 (citing *United States v. Latimer*, 511 F.2d 498, 501 (10th Cir. 1975)). As the Supreme Court stated in *Barker*, "[a] defendant has no duty to bring himself to trial; the State has that duty as well as the duty of insuring that the trial is consistent with due process." 407 U.S. at 527. For this reason, a defendant does not bear the burden of protecting this right, particularly if he is uninformed that formal proceedings triggering that right have commenced against him. *See Doggett v. United States*, 505 U.S. 647, 653–54 (1992) (ruling that when defendant was not

aware of indictment prior to arrest, he was "not to be taxed for invoking his speedy trial right only after his arrest"); *see also United States v. Vaughan*, 643 Fed. Appx. 726, 731 (10th Cir. 2016) ("We agree that this factor should be deemed neutral here, given [defendant's] assertion he had no knowledge of the indictment during the relevant 22-month delay.").

In this case, Defendant was unaware of the indictment, and was thus unable to invoke his right to a speedy trial during the eighteen-month delay. Although the Government points out that Defendant has requested three continuances of trial, Defendant made those requests after the eighteen-month delay. The Court thus considers this factor neutral because it weighs in favor of neither party.

### D.     Fourth *Barker* Factor: Prejudice to the Defendant

Unlike the other factors of the *Barker* framework, the defendant bears the burden on this factor of demonstrating that his Sixth Amendment right to a speedy trial was prejudiced by the delay. *See Seltzer*, 595 F.3d at 1179 ("The individual claiming the Sixth Amendment violation has the burden of showing prejudice." (citation omitted)). The Tenth Circuit explained that "[e]ven though we may conclude that a delay is presumptively prejudicial under the first *Barker* factor, we will relieve a defendant of his separate 'burden to present specific evidence of prejudice' under the fourth *Barker* factor only if there is evidence of an extreme delay." *United States v. Black*, 830 F.3d 1099, 1120–21 (10th Cir. 2016) (citation omitted); *see Seltzer*, 595 F.3d at 1180 n.3 (requiring a delay of six years to constitute extreme delay). If a defendant cannot show "extreme delay," the defendant must

> make a particularized showing of prejudice which addresses the interests the speedy trial right was designed to protect. These interests include (i) the prevention of oppressive pretrial incarceration; (ii) the minimization of anxiety and concern of the accused; and (iii) [the] minimization of the possibility that the defense will be impaired.

*Black*, 830 F.3d at 1122 (citations and quotation marks omitted). Of these interests, "the most serious is the 'hindrance of the defense' because the inability of a defendant to adequately prepare his case skews the fairness of the entire system." *Seltzer*, 595 F.3d at 1179–80 (citation omitted).

Defendant asserts two primary reasons for why the fourth *Barker* factor should weigh in his favor. First, he claims that his plea of *nolo contendere* in state court, which he entered without knowing he was under federal indictment, impaired his ability to defend against this charge in federal court. Doc. 24 at 5–6. Second, Defendant argues that under the reasoning in *Seltzer*, the Tenth Circuit has "deemed it sufficient for dismissal that the defendant was unable to exercise certain fundamental rights." Doc. 28 at ¶ 12.

> **1.** **Defendant was not prejudiced by the delay when he entered a *nolo contendere* plea in state court because a *nolo contendere* plea is not an admission of factual guilt under New Mexico law.**

Defendant's first argument is that his defense is impaired because he pleaded no contest to the state court charge after the federal indictment was obtained, but before Defendant was given notice of the indictment. The state court charges were numerous, but one of the three to which Defendant pleaded no contest was possession of a firearm or destructive device by a felon. Doc. 26-1 at 1. The defense asserts that "[b]efore he was made aware of the pending indictment, Mr. Chavira pleaded guilty to all of the elements of the federal charge, and potentially ushered in a mandatory minimum sentence of 15 years of incarceration." Doc. 24 at 5–6. In response, the United States points out that Defendant pleaded no contest in state court. Doc. 26 at 12. The Government's position is that it is still required to "prove at trial for the instant offense that the defendant was guilty beyond a reasonable doubt." *Id.* Defendant replies that "Mr. Chavira's State of New Mexico 'no contest' plea functions in every respect as a plea of guilty does." Doc. 28 at

¶ 1 n.1. The Court finds that Mr. Chavira's defense was not impaired when he entered the no contest plea to the state charge during the delay on his federal arraignment because he did not admit factual guilt to the charge.

The effect of a plea of *nolo contendere* is determined by the law of the state in which the defendant entered the plea. *See United States v. Cartwright*, 678 F.3d 907, 915 (10th Cir. 2012) ("Because Defendant entered his *nolo contendere* plea in Oklahoma, we must examine the effect of a *nolo contendere* plea in that state."). As Defendant entered his plea in New Mexico state court, this Court turns to the law of New Mexico to determine its effect. In *Kipnis v. Jusbasche*, 388 P.3d 654 (N.M. 2016), the Supreme Court of New Mexico stated that "[i]n New Mexico, a nolo plea has the same effect as a guilty plea for the purpose of entering a judgment and sentence in the case in which the plea is entered, but *unlike a guilty plea it is not an express or implied admission of factual guilt*." 388 P.3d at 658 (emphasis added). The *Kipnis* court further stated, "[l]iterally meaning 'I do not wish to contend,' a nolo plea has been viewed not as an express admission of guilt but as a consent by the defendant that he may be punished as if he were guilty." *Id.* (citation and quotation marks omitted). Notably, this description is in line with federal law. *See Rose v. Uniroyal Goodrich Tire Co.*, 219 F.3d 1216, 1220 (10th Cir. 2000) ("[A]lthough a plea of *nolo contendere* has the same *legal* effect as a guilty plea, it is not a *factual* admission to the underlying crime." (citing *Olsen v. Correiro*, 189 F.3d 52, 59 (1st Cir. 1999))).

The transcript from Defendant's state court plea colloquy aligns with this interpretation. After the state court heard the prosecution's proffer of evidence, the judge asked defense counsel if she thought the state would be able to present facts from which a jury, "viewing the evidence

in the light most favorable to the State, could return a verdict of guilty as to each offense?" Doc. 26-2, at 8:1–5. Defendant's attorney on the state charges, Ms. Britt Baca-Miller, responded:

> Your Honor, I—I can't necessarily say that since he is pleading no contest. I do think there is enough evidence to present to a jury and there's a likelihood that they would find him guilty. However, as far as the possession of a firearm, I think that there were fingerprints that tied it back to him, and so I think that there's a likelihood that he would be found guilty, which is why he is pleading no contest to that one, because he wasn't necessarily in possession of it, but it was found in the vehicle, and, again, his fingerprints were on it.

Doc. 26-2, at 8:6–16. This colloquy demonstrates that Ms. Baca-Miller confirmed Defendant was not contesting the charge, and was expressly not admitting a key element, namely possession of the firearm. Additionally, Defendant did not admit the crimes or facts as described in the State's proffer of evidence. *See* Doc. 26-2 at 5:20–7:24 (prosecution's proffer of evidence). The judge ruled that "the Court will adjudge the defendant guilty of the crimes *as charged*." *Id.* at 14:17–18 (emphasis added). The Court did not find Defendant guilty of the crimes as described in the proffer by the prosecution.[3] Finally, the Plea and Disposition Agreement reflects that the plea of "GUILTY" is crossed out and "NO CONTEST" is written above it, with two sets of initials beside it. Doc. 26-1 at 1.

This Court is therefore satisfied that Defendant's plea of *nolo contendere* is supported by the plea colloquy and that Defendant did not plead guilty to the state charge of possession of a firearm by a felon or admit the prosecution's proffered facts. If Defendant had entered a guilty plea, the Court's analysis might diverge at this point; on these facts, however, Defendant did not provide a factual admission of guilt in the state court. As such, the Government must carry the

---

[3]      The D.C. Circuit Court of Appeals conducted a similar analysis in *United States v. Ventura*, 565 F.3d 870 (D.C. Cir. 2009), in its determination that by pleading *nolo contendere*, the defendant did not admit the facts as proffered by the prosecution. 565 F.3d at 879; *see also Cartwright*, 678 F.3d at 915 (citing *Ventura* analysis).

burden of establishing beyond a reasonable doubt all the elements of Defendant's federal charge of violating 18 U.S.C. § 922(g)(1).

Additionally, the Court notes that Defendant should find solace in the prohibition imposed by Federal Rule of Evidence 410[4] that prevents the plea of *nolo contendere* or statements made in conjunction with the plea colloquy from being admitted against the defendant in later civil or criminal proceedings. *Rose v. Uniroyal Goodrich Tire Co.*, 219 F.3d 1216, 1220 (10th Cir. 2000). The rationale is that, as the *Kipnis* court observed, "a nolo plea, unlike a guilty plea, has no probative value and is intended to encourage plea negotiations by avoiding collateral evidentiary consequences resulting from guilty pleas, . . . ." 388 P.3d at 658 (describing the policies underlying the use of the plea); *see also* Fed. R. Crim. P. 11(f) (referencing Rule 410 for admissibility of a plea or related statements); Fed. R. Evid. 803(22)(A) (excluding plea of *nolo contendere* from exceptions to hearsay rule). Notably, at the hearing on June 6, the Government offered that it would stipulate to exclusion of evidence of the state *nolo contendere* plea.

For these reasons, Defendant has not carried his burden of demonstrating that he was prejudiced by entry of the plea of *nolo contendere* in state court during the eighteen-month post-indictment delay.

---

[4]      Fed. R. Evid. 410 provides:
In a civil or criminal case, evidence of the following is not admissible against the defendant who made the plea or participated in the plea discussions:
    (1) a guilty plea that was later withdrawn;
    (2) a nolo contendere plea;
    (3) a statement made during a proceeding on either of those pleas under Federal Rule of Criminal Procedure 11 or a comparable state procedure; or
    (4) a statement made during plea discussions with an attorney for the prosecuting authority if the discussions did not result in a guilty plea or they resulted in a later-withdrawn guilty plea.

There are exceptions to the admissibility of statements encompassed by Rule 410, but those exceptions are not before the Court at this time. *See* Fed. R. Evid. 410(b) (providing that a court may admit statements described in 410(3) or (4) in special circumstances).

### 2. The inability to invoke certain rights is not a sufficiently particularized showing of prejudice to support dismissal of the indictment.

Defendant argues that instead of making a "particularized showing" of prejudice as required under the *Barker* framework, the Tenth Circuit's ruling in *United States v. Seltzer*, 595 F.3d 1170 (10th Cir. 2010), supports his assertion that it is "sufficient for dismissal that the defendant was unable to exercise certain fundamental rights." Doc. 28 at ¶ 12. For the following reasons, Defendant's argument that the Court should adopt this broad construction fails.

First, contrary to Mr. Chavira's position, the defendant in *United States v. Seltzer* did make a particularized showing of prejudice that his defense was impaired by the pre-arraignment delay. 595 F.3d 1170, 1173 (10th Cir. 2010) (finding that "under the circumstances," Seltzer met this showing). In *Seltzer*, the defendant was already incarcerated on unrelated state court charges when the United States obtained a federal indictment against him. *Id.* at 1173. The United States delayed prosecution, including Seltzer's arraignment, until the state prosecution concluded. *Id.* at 1174. The Tenth Circuit's affirmation of the district court's dismissal of the indictment relied in part on the fact that while Seltzer had a federal indictment against him, and was not appointed counsel on that indictment, the Government engaged in negotiations with his co-defendant Ortego (who made statements against Seltzer), which caused the prosecution to ultimately dismiss the charges against Ortego. *Id.* at 1173–74. The Government also appeared in court ex parte. *Id.* at 1180. As the district court explained the prejudice,

> Mr. Seltzer—unlike Ortego—was never given the opportunity to try to strike a deal and—once Ortego provided testimony in exchange for clemency—was left in the unenviable position of having to defend against Ortego's testimony. I am left to wonder whether Mr. Seltzer's shoe would be on Ortego's foot had Mr. Seltzer been brought to court first.

*Id.* at 1174 n.1. Seltzer's defense was therefore impaired by the pre-arrangement delay, which is one of the three interests protected by the speedy trial right.

Similar to Seltzer, it is true that Mr. Chavira was uninformed about the federal charge during the pre-arrangement delay. Unlike Seltzer, however, Mr. Chavira has not made a specific showing that not knowing about the indictment somehow hindered his defense in the federal case. There is no evidence that the prosecution's conduct parallels that in *Seltzer*, such as holding ex parte hearings, negotiating with a co-defendant, or depriving Mr. Chavira of the chance to enter a plea deal. There was actually no movement in Defendant's case during the delay, a fact that the Government freely admits was due to basic negligence. Additionally, Mr. Chavira had counsel during the state proceedings, and he received the benefit of consultation with his state attorney to reach his no contest plea. Unlike Seltzer, Defendant has not shown that the pre-arrangement delay after the federal indictment somehow impairs any defense he may have.[5]

Second, Defendant's broad claim ignores the fact that the Tenth Circuit has continued to use the four-part *Barker* framework, which treats delay and prejudice as separate factors. *Seltzer* did state that the defendant "was prejudiced by the delay in his initial appearance, as the delay deprived him of a chance to invoke his statutory rights under the Speedy Trial Act at an earlier date."[6] *Seltzer*, 595 F.3d at 1180 (citing 18 U.S.C. § 3161(c)(1)). But if the Court adopted Defendant's assertion that the mere inability to invoke these rights during the delay alone is sufficient to show prejudice, then any defendant who could show a pre-arrangement delay would be able to show prejudice—which is not the test under *Barker*. The Tenth Circuit has stated that

---

[5]     The Court addresses Defendant's separate claim that he was deprived of his Sixth Amendment right to counsel by the delay in Part IV, *infra*.

[6]     The Tenth Circuit also focused on the fact that Seltzer's co-defendant had these protections because of his timely arraignment, which included the appointment of counsel and resulted in the ultimate dismissal of his charges by the prosecution. *Id.* at 1180. Additionally, Seltzer was promptly arraigned when the superseding indictment was obtained. *Id.*

"[e]ven though we may conclude that a delay is presumptively prejudicial under the first *Barker* factor, we will relieve a defendant of his separate 'burden to present specific evidence of prejudice' under the fourth *Barker* factor only if there is evidence of an extreme delay." *Black*, 830 F.3d at 1120–21 (citation omitted). As noted in *Seltzer*, "[g]enerally, the court requires a delay of six years before allowing the delay itself to constitute prejudice." 595 F.3d at 1180 n.3. Defendant's delay was not six years, so his attempt to collapse the first and fourth factors is unsuccessful.

Third, the Tenth Circuit has consistently characterized "impairment to the defense" in the "sense envisioned by the *Barker* analysis" as involving evidentiary issues that result from the delay. *United States v. Toombs*, 574 F.3d 1262, 1275 (10th Cir. 2009). Impairment to the defense is the most serious of the three interests protected by the speedy trial right, and prejudice results when the "defense was hindered in the sense that [the defendant] was not able to defend the charges against him to the extent he desired." *Id.* Prior to and since *Seltzer*, the Tenth Circuit has reiterated that impairment to the defense often implicates evidence that is lost or deteriorated during the delay. *See Barker*, 407 U.S. at 534 (finding minimal prejudice to the defense because there was "no claim that any of Barker's witnesses died or otherwise became unavailable owing to the delay"); *United States v. Hicks*, 779 F.3d 1163, 1169 (10th Cir. 2015) (finding no impairment to defense because defendant "does not argue that the delay resulted in the loss of specific evidence or the unavailability of certain witnesses"); *United States v. Margheim*, 770 F.3d 1312, 1329 (10th Cir. 2014) ("Prejudice to the defendant in this regard will be 'obvious' if witnesses die or disappear, or if witnesses lose their memory of events that are critical to the theory of defense."); *Castro v. Ward*, 138 F.3d 810, 820 (10th Cir. 1998) (finding no impairment to defense because petitioner "has not claimed that any specific witness or evidence was

somehow rendered unavailable or less persuasive because of the passage of time"). Defendant does not attempt to show that the delay impaired his defense in this way.

Finally, the Tenth Circuit found that the delay extended Seltzer's pretrial incarceration, which was prejudicial. 595 F.3d at 1180. Defendant relies on this finding from *Seltzer* and on the pre-*Barker* case *Smith v. Hooey*, 393 U.S. 374 (1969), for his argument that he has been prejudiced because "the possibility that the defendant already in prison might receive a sentence at least partially concurrent with the one he is serving may be forever lost" due to the post-indictment delay. 393 U.S. at 378. A defendant has no right, however, to have his state and federal sentences run concurrently. Furthermore, the ruling in *Seltzer* concerned the Speedy Trial Act interest of pre-trial incarceration, not post-trial punishment. The Court notes that there are sentencing mechanisms, such as a downward variance, through which a defendant may request the Court to adjust a potential sentence in unique circumstances. The Court further notes that in the document entitled Habitual Offender Plea and Disposition Agreement filed in the state court case against Defendant (Doc. 26-1), Defendant plead no contest to the state charges of (i) receiving or transferring a stolen vehicle, (ii) tampering with evidence, and (iii) possession of a firearm or destructive device by a felon. The Transcript of Proceedings from the state court case indicates that the state court judge sentenced Defendant on the three charges to a consecutive total term of incarceration of eight and one-half years with all but four years suspended, for a total term of incarceration of four years. Doc. 26-2 at p. 16. Thus, during the eighteen-month delay at issue in Defendant's federal case, he was serving a state custody sentence pursuant to a plea agreement in state court for charges to which he pleaded no contest. Under the factual scenario outlined herein, the Court does not see prejudice to the Defendant.

In conclusion, Defendant has failed to make a particularized showing that his defense was prejudiced by the delay because of his *nolo contendere* plea in state court or by the inability to invoke his speedy trial rights sooner. This factor thus weighs against Defendant.

**E.    Balancing**

The *Barker* analysis is a balancing test, in which none of the singular factors is "a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial." *Seltzer*, 595 F.3d at 1181 (citation omitted). As the Tenth Circuit has noted, however, "[f]ailure to show prejudice caused by the delay is nearly fatal to a speedy trial claim." *United States v. Hicks*, 779 F.3d 1163, 1168 (10th Cir. 2015) (citation and quotation marks omitted); *Margheim*, 770 F.3d at 1329 ("[I]n most circumstances, failure to specify prejudice will eviscerate the defendant's claim.").

Here, the first factor, length of delay, was presumptively prejudicial because the delay was eighteen months, which weighs in Defendant's favor. The second factor, reason for delay, was negligence by the prosecuting attorney as a result of not communicating with the task force agent and not timely reviewing files. This factor weighs against the Government, but not as heavily as a bad-faith violation. The third factor, assertion of speedy trial right, was neutral because Defendant was unaware of the indictment during the delay, so he could not assert his rights during the timeframe. Finally, the prejudice factor weighs against Defendant because he did not carry the burden to demonstrate that the delay prejudiced his case.

In the balancing of these factors, the Court finds that the lack of prejudice, while not dispositive by itself, is fatal to Defendant's motion. The first and second factors do weigh against the Government, especially considering the relative simplicity of the single charge in the indictment. These two factors, however, do not outweigh the lack of prejudice caused by the delay. The Court also considers that there was no movement by the prosecution in Defendant's

case during the delay, Defendant was not subject to pre-trial detention on the federal charge, and Defendant received counsel prior to his federal arraignment. Most importantly, Defendant was not prejudiced by the entry of his *nolo contendere* plea in state court, which is of the utmost importance to this Court. Therefore, the Court concludes that dismissal of the indictment against Defendant is not proper on these grounds because Defendant's constitutional right to a speedy trial was not violated under the *Barker* framework.

Additionally, the Court notes that the facts in *United States v. Vaughan*, 643 Fed. Appx. 733 (10th Cir. 2016), are similar to those in the present case.[7] In *Vaughan*, the defendant was uninformed of a pending federal indictment against him when he pleaded guilty to related crimes in federal court. 643 Fed. Appx. at 727–28. Notably, Vaughan pleaded guilty but rejected a global plea deal that would have included the undisclosed federal charge. *Id.* at 727–28. The Tenth Circuit ruled the defendant failed to provide "specific evidence of prejudice" that his defense was impaired by the twenty-two-month delay between indictment and arraignment on the undisclosed charge. *Id.* at 733. The factors balanced in the same manner, which led the court to conclude that the defendant's speedy trial rights were not violated under *Barker*. *Id.* at 733.

## II.     Speedy Trial Act and Interstate Agreement on Detainers

Also to support his motion to dismiss the indictment, Defendant relies on two statutory notice provisions, namely the Speedy Trial Act, 18 U.S.C. § 3161(j)(1), and the corresponding provision of the Interstate Agreement on Detainers, 18 U.S.C. App. 2 § 2 art. III(a). Without ruling on whether the Government violated either notice provision, the Court finds that dismissal of the indictment would not be the proper remedy for such a violation of either statute. As

---

[7]     The Tenth Circuit reviewed de novo the defendant's claim of ineffective assistance of counsel for failure to raise the speedy trial issue at the district court. *Id.* at 733 ("Thus, to succeed on his § 2255 motion, Vaughan must show a reasonable probability that, had his counsel filed a motion to dismiss the indictment on speedy-trial grounds, it would have been granted.").

Defendant points out, the failure of these statutes to provide for dismissal in this instance may make the notice provisions ineffective tools of the Sixth Amendment; regardless, this Court is bound to established precedent and the express provisions of the statutes, which do not provide for this remedy.

### A.  Speedy Trial Act

The Speedy Trial Act, 18 U.S.C. §§ 3161–3162, provides for dismissal of the indictment against a defendant as a remedy in two instances: "if no indictment or information is filed within the time limit required by section 3161(b)[8]" or "if a defendant is not brought to trial within the time limit required by section 3161(c)[.][9]" 18 U.S.C. §§ 3162(a)(1), (2). Defendant does not argue that the Government violated either of those sections, and the Court notes that Defendant's trial was scheduled within seventy days of his arraignment. Here, Defendant brings his statutory claim pursuant to 18 U.S.C. § 3161(j)(1), which provides that

> [i]f the attorney for the Government knows that a person charged with an offense is serving a term of imprisonment in any penal institution, he shall promptly—
>> (A) undertake to obtain the presence of the prisoner for trial; or
>> (B) cause a detainer to be filed with the person having custody of the prisoner and request him to so advise the prisoner and to advise the prisoner of his right to demand trial.

18 U.S.C. §§ 3161(j)(1)(A), (B). This provision places the responsibility on the Government to pursue either option after obtaining the indictment. Both options, at a minimum, would have provided the defendant with notice of the pending indictment against him. The United States failed to secure a detainer against Defendant while he was incarcerated for the state charges, and it neglected to bring Defendant to court for his arraignment for eighteen months.

---

[8]  18 U.S.C. § 3161(b) provides that "[a]ny information or indictment charging an individual with the commission of an offense shall be filed within thirty days from the date on which such individual was arrested or served with a summons in connection with such charges."

[9]  18 U.S.C. § 3161(c)(1) provides that a defendant's trial "shall commence within seventy days from the filing date of the . . . indictment, or from the date the defendant has appeared before a judicial officer of the court in which such charge is pending, whichever date last occurs."

The Speedy Trial Act expressly provides for dismissal of the indictment in only two circumstances, neither of which is violation of section 3161(j)(1). As Defendant concedes, the Tenth Circuit and other circuit courts have found that violation of the notice provision alone is insufficient to support dismissal of the indictment. In *United States v. Torres-Centeno*, the Tenth Circuit noted that "every circuit that has addressed this issue has held that dismissal is not an available remedy for a violation of § 3161(j)(1)." No. 99-4137, 2000 U.S. App. LEXIS 6750, at *7 (10th Cir. Apr. 12, 2000) (ruling "that even if [defendant] could establish that the government failed to act 'promptly' in obtaining his presence for trial or service the detainer, he has failed to demonstrate that dismissal of the indictment would be an appropriate remedy.").[10] The Court looks to *Torres-Centeno* and other circuit court precedent to support its ruling that dismissal is not the proper remedy for violation of section 3161(j)(1), and thus the Court does not reach the issue of whether the Government violated it.[11]

### B.    Interstate Agreement on Detainers

A related notice provision is found in the Interstate Agreement on Detainers, 18 U.S.C. App. 2 (hereinafter "the IAD"), which is a compact between all jurisdictions inside the United States, including the United States itself. *United States v. Washington*, 596 F.3d 777, 780 (10th Cir. 2010). The IAD "creates uniform procedures for lodging and executing a detainer by one State against a prisoner held in another." *United States v. Lualemaga*, 280 F.3d 1260, 1263 (9th

---

[10]    The Tenth Circuit cited to numerous cases from federal courts of appeals that ruled on the same issue, which this Court notes support this ruling. *See, e.g.*, *United States v. Tanner*, 941 F.2d 574, 582 (7th Cir. 1991) ("In any case, if § 3161(j) had been violated by the government's lack of promptness, the remedy for such a violation is not dismissal of the indictment, but rather disciplinary sanctions against the government attorney. (citing 18 U.S.C. § 3162(b)(4))); *United States v. Dawn*, 900 F.2d 1132, 1135 (7th Cir. 1990) (affirming the district court's conclusion "that it was unnecessary to decide whether the government complied with the requirements of § 3161(j) because the remedy sought by the defendant, dismissal of the indictment, was not available for violations of § 3161(j)").

[11]    The sanctions for violation of section 3161(j) are in section 3162(b), which provides that the Court may impose sanctions on the attorney for the Government if the Court finds a willful violation of section 3161. 18 U.S.C. § 3162(C)–(E). As the Court explained above, there is no evidence of a willful violation by the Government.

Cir. 2002). Notably, however, the IAD does not include a provision *requiring* the lodging of a detainer against a prisoner.[12] *Id.*; 18 U.S.C. App. 2, § 2, Art. III(a).

The IAD lists dismissal of the indictment as the appropriate remedy for three types of violations, but it does not provide for a remedy or sanction if the state fails to lodge the detainer. *See Lualemaga*, 280 F.3d at 1263–64 (supporting "the conclusion that the enumerated list of circumstances requiring dismissal is exclusive"). Even if the failure to lodge a detainer is considered a violation of the notice requirements of the IAD, "dismissal of an indictment is not an available form of relief where the notice requirement of the IAD is violated, even when that violation is attributable to the receiving State, here the United States." *Id.* at 1265. In *United States v. McIntosh*, the Tenth Circuit agreed with the approach in *Lualemaga* that dismissal is not a proper remedy for violation of the IAD notice provision. 514 Fed. Appx. 783, 794 (10th Cir. 2013) ("[D]ismissal of the indictment is not an available remedy for a violation of the notice provisions of the Interstate Agreement on Detainers." (citing *United States v. Robinson*, 455 F.3d 602, 606 (6th Cir. 2006) and *Lualemaga*, 280 F.3d at 1265)).

Defendant did not receive notice of his rights pursuant to the IAD because the United States did not file a detainer. As dismissal is not a remedy for a violation of the IAD's notice provision, the Court rejects Defendant's assertion that dismissal is allowed. In conclusion, the Court will not read a remedy into the notice provisions of the IAD or the Speedy Trial Act when

---

[12]      As stated in *United States v. McIntosh*, 514 Fed. Appx. 783, 794 (10th Cir. 2013):

     When a detainer is lodged against a prisoner, the warden or another prison official must 'promptly inform [the prisoner] of the source and contents of any detainer lodged against him and shall also inform him of his right to make a request for final disposition' of the charges. If a prisoner requests a 'final disposition' of the detainer charges, he has a right to be brought to trial within 180 days of that request. Even if he does not request a final disposition, the receiving state must begin the prisoner's trial 'within one hundred and twenty days of the arrival of the prisoner in the receiving State, but for good cause shown in open court, the prisoner or his counsel being present, the court having jurisdiction over the matter may grant any necessary or reasonable continuance.'

(citations omitted).

those provisions are not among the enumerated provisions that call for dismissal of the indictment, and when established case authority directs the opposite outcome.

## III.    Fifth Amendment: Due Process Clause

Tenth Circuit law requires that when a defendant seeks to demonstrate that his due process rights were violated by a delay in prosecution, he must "prove (1) the delay resulted in substantial prejudice to his rights, and (2) the prosecution intentionally delayed prosecution in order to gain a tactical advantage." *United States v. Abdush-Shakur*, 465 F.3d 458, 465 (10th Cir. 2006); *see United States v. Madden*, 682 F.3d 920, 929 (10th Cir. 2012).

As detailed above, the Court finds that there is no evidence of bad faith or willful violation by the Government, either constitutional or statutory. The Court finds the representations at the hearing on June 6 credible, and accepts the United States' assertion that "[t]he only reason for the delay was an honest mistake by the case agent who did not know the procedure for notifying the defendant, who was in state custody, of the federal indictment. The United States also neglected to bring the defendant into federal custody." Doc. 26 at 9. Also, as the Court explained, Defendant has not demonstrated that he was prejudiced by the delay. As such, the Court rejects the claim that Defendant was deprived of his due process rights.

## IV.    Sixth Amendment: Right to Counsel

As the Tenth Circuit has explained, "[t]he Supreme Court has long endorsed the view that the Sixth Amendment right to counsel does not attach until the initiation of formal criminal proceedings in a court of law by way of preliminary hearing, *indictment*, information, or arraignment." *United States v. Calhoun*, 796 F.3d 1251, 1254 (10th Cir. 2015) (emphasis added) (citing *Moran v. Burbine*, 475 U.S. 412, 431 (1986). The Supreme Court held in *McNeil v. Wisconsin*, 501 U.S 171 (1991), that

[t]he Sixth Amendment right, however, is offense specific. It cannot be invoked once for all future prosecutions, for it does not attach until a prosecution is commenced, that is, at or after the initiation of adversary judicial criminal proceedings—whether by way of formal charge, preliminary hearing, indictment, information, or arraignment.

501 U.S. at 175 (citations and quotation marks omitted). The remedy for a violation of the Sixth Amendment is, therefore, also offense-specific. *See id.* at 176 ("Incriminating statements pertaining to other crimes, as to which the Sixth Amendment right has not yet attached, are, of course, admissible at a trial of those offenses." (citation omitted)); *see also Texas v. Cobb*, 532 U.S. 162, 167–68 (2001) (declining to adopt a "factual relation" exception to the offense-specific rule, and affirming the offense-specific construction articulated in *McNeil*).

In *United States v. Morrison*, 449 U.S. 361 (1981), the Supreme Court explained that the remedy for a Sixth Amendment violation must "neutralize the taint" of a constitutional violation, "by tailoring relief appropriate in the circumstances to assure the defendant the effective assistance of counsel and a fair trial." 449 U.S. at 364–65. It was in *Morrison* in which the Supreme Court ruled that "absent demonstrable prejudice, or substantial threat thereof, dismissal of the indictment is plainly inappropriate, even though the violation may have been deliberate." *Id.* at 365. The Supreme Court explained that

when before trial but after the institution of adversary proceedings, the prosecution has improperly obtained incriminating information from the defendant in the absence of his counsel, the remedy characteristically imposed is not to dismiss the indictment but to suppress the evidence or to order a new trial if the evidence has been wrongfully admitted and the defendant convicted.

*Id.* As the Tenth Circuit stated in reliance on *Morrison*, the dismissal of an indictment because of a Sixth Amendment violation requires the defendant to show that he suffered an "effect of constitutional dimension" to compel such a "drastic step" that is a "disfavored remedy." *United States v. Calhoun*, 796 F.3d 1251, 1255 (10th Cir. 2015) (citation omitted).

Here, Defendant's right to counsel on the federal charge attached when the grand jury handed down the federal indictment on March 8, 2016; Defendant's right to counsel for the federal charge had not attached prior to that time. In accord with the Sixth Amendment, Defendant received counsel prior to his arraignment on the federal charge, which was his first formal appearance on the federal indictment. *See Rothgery v. Gillespie County*, 554 U.S. 191, 212 (2008) ("Once attachment occurs, the accused at least is entitled to the presence of appointed counsel during any 'critical stage' of the postattachment proceedings; . . . ."). Notably, there was no movement in Defendant's federal case during the eighteen-month delay, and he did not appear in federal court without counsel, nor did the Government appear ex parte. There is no evidence that the Government attempted to engage with Defendant in a manner that violated the Sixth Amendment, and Defendant does not assert that kind of violation or request suppression of evidence or statements obtained in violation of his right to counsel.

Defendant argues that he was subject to the unconstitutional deprivation of counsel on the federal charge when he entered his state plea during the delay, which he claims compels dismissal of the indictment. He asserts that his current "counsel's role in this situation has been diminished beyond recognition." Doc. 24 at 8. Defendant claims that by the time he was appointed counsel on the federal indictment, he had "already pleaded guilty, under oath, to each of the elements of the federal indictment. He did so, however, without a lawyer to advise him of what the legal effect of his guilty plea was." *Id.* Defendant states that "a trial would be a sham process" and "[p]lea negotiation is similarly a charade." *Id.*

The Court rejects this characterization by Defendant. First, contrary to Defendant's assertion, the legal effect of the *nolo contendere* plea in state court was not a factual admission of guilt. *See Kipnis v. Jusbasche,* 388 P.3d 654, 658 (N.M. 2016). Because he did not admit the

facts in the prosecution's proffer of evidence, or admit factual guilt at all, Defendant did not plead guilty to each of the elements on the federal indictment. *See* discussion *supra* Part I.D.1. Furthermore, upon consideration of the consequences of the no contest plea under the Federal Rules of Evidence, the Court does not agree that a trial or plea negotiations would be a "sham." *See* Fed. R. Evid. 410; discussion *supra* Part I.D.1. Finally, not only was the state plea not prejudicial to Defendant for reasons previously discussed, but, crucially, he did in fact have counsel to advise him on the legal effects of entering that plea to the state charges. *See* Doc. 26-2 (providing a transcript of the state court plea colloquy).

Defendant fails to cite any authority that requires the Court to dismiss the indictment because of Defendant's unawareness of pending investigations or charges against him. Indeed, this is a consequence contemplated by the Supreme Court in its ruling in *McNeil*. 501 U.S. at 176 ("To exclude evidence pertaining to charges as to which the Sixth Amendment right to counsel had not attached at the time the evidence was obtained, simply because other charges were pending at that time, would unnecessarily frustrate the public's interest in the investigation of criminal activities . . . ."). In this case, Defendant has not shown that his Sixth Amendment right to counsel on the federal indictment was infringed, much less to the constitutional degree that the Court should engage in the disfavored practice of dismissing the indictment with prejudice. As the Supreme Court stated in *Morrison*, the remedy for a violation of the Sixth Amendment is supposed to "neutralize" the effect of the constitutional violation, and dismissal of the indictment is improper absent a showing of "demonstrable prejudice." 449 U.S. at 365. The Court will, therefore, not dismiss the indictment against Defendant on these grounds.

## CONCLUSION

For these reasons, the Court finds that there was no violation of Defendant's Fifth or Sixth Amendment rights. Additionally, without ruling on whether the Government violated the statutory notice provisions, the Court rejects Defendant's argument that dismissal of the indictment would be the proper remedy for such violations. Finally, the Court will not impose sanctions against the attorney for the Government in this case, based upon the finding that the prosecution's conduct that caused the delay was negligent and not willful.

**THEREFORE,**

**IT IS ORDERED** that Defendant's Motion to Dismiss Indictment or Other Sanctions (**Doc. 24**), filed February 20, 2018, is hereby DENIED for the reasons stated in this Memorandum Opinion and Order.

_____

CHIEF UNITED STATES DISTRICT JUDGE